UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KEITH ARNOLD, | ) |
|     Plaintiff, | ) Case No. 1:23-cv-143 |
| v. | ) Judge Travis R. McDonough |
| CO KEENE, CORPORAL CRAWFORD, CO BOWSER, CO NORTON, and SULLIVAN COUNTY SHERIFF'S OFFICE, | ) Magistrate Judge Christopher H. Steger |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff, an inmate housed in the Sullivan County Detention Center, filed a pro se complaint for violation of 42 U.S.C. § 1983 arising out his cell flooding (Doc. 1) and a motion for leave to proceed *in forma pauperis* (Doc. 4). Plaintiff's motion for leave to proceed *in forma pauperis* (*id.*) will be **GRANTED**, and this action will be **DISMISSED** because the complaint does not allow the Court to plausibly infer that any Defendant disregarded a substantial risk of harm to Plaintiff based on the conditions of Plaintiff's confinement that resulted from the cell flooding, and it therefore fails to state a claim upon which relief may be granted under § 1983.

### I.    FILING FEE

First, as it appears from Plaintiff's motion for leave to proceed *in forma pauperis* (*id.*) that he cannot pay the filing fee, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, twenty percent (20%) of his preceding monthly income

(or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to both the custodian of inmate accounts at Plaintiff's current institution and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief

2

Case 1:23-cv-00143-TRM-CHS   Document 5   Filed 06/30/23   Page 2 of 10   PageID #: 17

"above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

B. **Allegations**

On June 5, 2023, Plaintiff woke up at four a.m. "to a wet saturated bed and bed linen and clothes." (Doc. 1, at 3.) According to Plaintiff, the liquid that had saturated these items appeared to be "stinking waste[]water yellowish brown in color . . . coming from a crack in the floor" of the one-man cell where he was sleeping "mat against mat" alongside three other inmates, with one mat next to the toilet. (*Id.* at 4.)

At four-thirty a.m., Plaintiff and two of his cellmates notified Defendant Corporal Crawford of the flooding in their cell, showed her their soaked mattresses, and asked her for cleaning supplies, showers, and clean linen. (*Id.*) But Defendant Corporal Crawford denied the inmates' requests, stated "she would put in an order to maintenance[,] and quickly shut [the] door." (*Id.*) Plaintiff and his cellmates then sat in their cell until ten a.m., at which point Plaintiff notified Defendant CO Keene of the incident and asked this Defendant "for a shower, clean linen, cleaning supplies[,] and laundry at least to be done." (*Id.*) But Defendant CO Keene laughed at Plaintiff and his cellmates and told them it was not laundry day, that shower time was not until the next shift, and that "he had other stuff to do instead and [was] busy." (*Id.*) According to Plaintiff, Defendant CO Keene was counting a stack of mats at approximately 3:40.[1] (*Id.*)

---

[1] The last digit of this time is cut off from the copy of the complaint on the Court's docket. (*Id.*)

Defendant CO Bowser came by Plaintiff's cell later, and Plaintiff showed him the cell and told him about the flooding incident. (*Id.*) Defendants CO Bowser and CO Norton then let Plaintiff and his cellmates go to the recreational yard for dinner, and the inmates pulled out their saturated mats, clothes, and bed linen. (*Id.*) But Plaintiff and his cellmates had nothing to drink with this dinner and still had not taken a shower. (*Id.*) Plaintiff and his cellmates did, however, receive latex gloves after asking for them. (*Id.* at 5.) They also presumably received cleaning supplies, as Plaintiff states that they cleaned their cell. (*Id.*)

Then, at "around 7:50 or later," which is approximately fifteen hours after Plaintiff and his cellmates first reported the flooding in their cell, Plaintiff and his cellmates received showers. (*Id.*) The inmates also filed grievances during their recreation, shower, and phone time. (*Id.*)

Plaintiff states that he was not in the cell that flooded for disciplinary reasons and is "very c[ourteous] and polite and respectful to everyone who works here at the jail." (*Id.*) Plaintiff also states that he has attention deficit hyperactivity disorder, anxiety, and obsessive-compulsive disorder but has not been able to receive his medicines, which has taken a toll on his mental health. (*Id.*). Plaintiff also has not spoken to internal affairs or any supervisors about the cell flooding incident despite sending his grievance to them. (*Id.*) Plaintiff states that the crack that caused the flooding is still next to his bed, and no maintenance worker or anyone else has asked about further leaks. (*Id.*) Plaintiff additionally contends that the inmates rarely get cleaning supplies and only do laundry once a week—sometimes only once every two weeks. (*Id.*) He further states that he lost his boxers and underwear during the flooding incident, but the replacement underwear did not fit, and that his bed linen from this incident was washed but not replaced. (*Id.*)

4

Plaintiff sued Corporal Crawford, CO Keene, CO Bowser, CO Norton, and the Sullivan County Sheriff's Office. (*Id.* at 1, 3.) As relief, he seeks "[j]ustice and financial compensation for the way [he] [has] been treated and forced to live along with [his] emotional tra[u]ma in th[ese] unsanitary, inhumane living conditions . . . on 6-5-2023 and basically since March 2023." (*Id.*)

## C. Analysis

It is unclear whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the incidents at issue in his complaint. But even if the Court assumes that Plaintiff was a pretrial detainee and therefore applies the arguably greater protections of the Fourteenth Amendment,[2] his complaint fails to state a claim upon which relief may be granted under § 1983 as to any Defendant.

A conditions-of-confinement claim has both objective and subjective elements. *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The objective element requires an allegation of a "sufficiently serious" deprivation. *Id.* And it is well-established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Thus, only allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" support a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted).

---

[2] A pretrial detainee's constitutional protections originate from the Due Process Clause of the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Despite the distinct constitutional provisions protecting the differing custodial designations, the protection offered by the Due Process Clause is "similar if not greater" than those afforded by the Eighth Amendment to convicted prisoners. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)); *see also Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020).

As to the subjective element, because the Court presumes that Plaintiff was a pretrial detainee at the time of the incidents alleged in his complaint, a jail official could not punish him through deliberate indifference to the conditions of his confinement. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). A jail official is deliberately indifferent to a pretrial detainee's conditions of confinement when he acts "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

### i. Sullivan County Sheriff's Office

First, the Sullivan County Sheriff's Office is not an entity subject to suit under § 1983. *Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-cv-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. §1983.") (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Also, while Plaintiff sets forth facts suggesting that the cell where he was housed at the time of the incidents in his complaint was overcrowded due to housing four inmates when it was made for one inmate, resulting in Plaintiff and his cellmates sleeping in mats on the floor, overcrowding is not in itself a constitutional violation. *Rhodes*, 452 U.S. at 347–48; *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012); *see also Hubbard v. Taylor*, 538 F.3d 229, 235-36 (3d Cir. 2008) (finding that forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation). And Plaintiff does not attribute the alleged overcrowding to a custom or policy of Sullivan County, such that this municipality could be liable for it under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for

6

harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs").

Thus, the complaint fails to state a claim upon which relief may be granted under § 1983 as to Defendant Sullivan County Sheriff's Office, and the Court will not liberally construe the complaint against Sullivan County.

### ii. Cell Flooding

As set forth above, Plaintiff's main complaint is that, despite Plaintiff and his cellmates first complaining to Defendant Corporal Crawford about the flooding in their cell and the resulting saturation of their mattresses, bed linens, and clothing early in the morning and later complaining to Defendants CO Keene and Bowser about these issues, Plaintiff and his cellmates were not able to clean their cells until approximately twelve hours after their initial complaint and did not receive showers until more than fifteen hours after their initial complaint. However, Plaintiff's complaint does not allow the Court to plausibly infer that any Defendant was deliberately indifferent to any substantial risk of serious harm to him based on these allegations.

First, while Plaintiff alleges that the "stinking" and "yellowish brown" liquid that flooded his cell and saturated his mattress, bed linens, and clothing "appeared to be" wastewater, and that he was unable to clean his cell for twelve hours or receive a shower for fifteen hours after first reporting this cell flooding, he does not allege that the liquid that flooded his cell came from the toilet, and it is apparent from his careful wording of this claim that even Plaintiff is not certain that the liquid that flooded the cell was wastewater. But even if the Court assumes that the liquid was wastewater, Plaintiff has not set forth facts from which the Court can plausibly infer that any Defendant knew or had reason to know that the alleged wastewater posed an unjustifiably high risk of harm to Plaintiff.

7

Specifically, while Plaintiff states that he told Defendants Corporal Crawford and COs Keene and Bowser about the cell flooding and requested showers, cleaning supplies, and/or new bed linens from them, he does not indicate that any Defendant knew or should have known that the liquid in the flooded cell was wastewater. But even if they did, Plaintiff does not state that this wastewater covered the entire floor of the cell, how much of his clothing was saturated, or that he had to continue to wear his wastewater-saturated clothing. And the Court cannot plausibly infer that any Defendant's knowledge that wastewater had saturated an unspecified portion of Plaintiff's clothing demonstrates that he or she knew of an extreme risk of harm to him.

Thus, Plaintiff has not set forth facts from which the Court can plausibly infer that any Defendant was deliberately indifferent to an unjustifiable risk of harm to him due to the cell flooding, and his complaint fails to state a claim upon which relief may be granted under § 1983 based on these allegations.

### *iii.* *Dinner Beverage*

Next, while Plaintiff named Defendant CO Norton as a Defendant herein, Plaintiff does not allege that this Defendant knew or had reason to know of the cell flooding and/or the other related conditions of Plaintiff's confinement. Instead, Plaintiff's only allegation against this Defendant is that Defendants CO Norton and CO Bowser let Plaintiff and his cellmates go to the recreational yard for dinner, but the inmates had nothing to drink with that dinner. (*Id.* at 4.) However, Plaintiff has not set forth any facts from which the Court could find that this lack of a dinner beverage rose to the level of a constitutional violation. But even if it did, nothing in the complaint suggests that Defendant CO Norton or Defendant CO Bowser was responsible for Plaintiff's failure to receive a beverage with his dinner on this occasion. *Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were

8

personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Thus, Plaintiff's allegation that he did not receive a dinner beverage on the day his cell flooded fails to state a claim upon which relief may be granted under § 1983.

### iv.     *Remaining Allegations*

Plaintiff's remaining allegations, including but not limited to his allegations (1) that the underwear he received to replace the boxer shorts and underwear he lost in the cell flooding incident did not fit; (2) that he has been unable to receive his medication; (3) that he still sleeps next to the crack in the floor that caused the flooding and no jail official has asked about any other leaks; (4) regarding the availability of cleaning supplies to inmates and the frequency of inmates' laundry service; (5) that his bed linen from the cell flooding incident was washed but not replaced; and (6) regarding his alleged inhumane treatment since March 2023, do not allow the Court to plausibly infer that any named Defendant violated his constitutional rights. As such, they fail to state a claim upon which relief may be granted under § 1983.

### III.    CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 4) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**